IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GREG W. SCHOENLEIN, | ) | CIVIL NO. 08-00073 JMS-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF |
| vs. | ) | SCHOENLEIN'S MOTION TO |
| | ) | REOPEN REQUEST FOR |
| HALAWA CORRECTIONAL | ) | INJUNCTION |
| FACILITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| DENNIS R. BROOKS, | ) | CIVIL NO. 08-00074 JMS-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HALAWA CORRECTIONAL | ) | |
| FACILITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| OPHERRO JONES, | ) | CIVIL NO. 08-00075 JMS-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HALAWA CORRECTIONAL | ) | |
| FACILITY et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# ORDER DENYING PLAINTIFF SCHOENLEIN'S MOTION
# TO REOPEN REQUEST FOR INJUNCTION

Before the court is Plaintiff Greg W. Schoenlein's Motion to Reopen Request for Injunction.[1]  Doc. No. 112.  Defendants timely filed their Memorandum in Opposition to the Motion on June 2, 2008.  For the following reasons, Schoenlein's Motion is DENIED.

## I. BACKGROUND

Schoenlein, a pre-trial detainee, is classified as "maximum custody," based on an attempted escape.  Defs.' Opp'n 4.  Due to this custody classification, Schoenlein was moved from the Oahu Community Correctional Center to the Halawa Correctional Facility ("HCF") on November 9, 2007, where he was originally housed in the HCF Medium Security Unit ("HCF Medium").  *Id.*  Because the HCF Medium unit was undergoing renovation, Schoenlein was transferred on February 4, 2008, to the HCF High Security Special Holding Unit ("HCF High"), Module A, Cell No. 3.

Schoenlein filed this action on February 20, 2008, alleging that Defendants were violating the Eighth Amendment by allowing toxic fumes to

---

[1] Schoenlein titles this request as "*Plaintiffs* Motion," apparently in the plural tense. Schoenlein is notified again that, although these actions are consolidated, he is not and may not represent the other consolidated plaintiffs or file motions on their behalf.  *See* Doc. No. 71, entered April 24, 2008, "Order Denying Request to Certify Class," at 2.  The court treats this motion as Schoenlein's motion only.

enter his cell when the HCF High emergency generator was run on February 4, 11, 20, and 25, 2008. On February 27, and March 5, 2008, Schoenlein filed Requests for Injunction ("Requests") seeking to prevent HCF High officials from operating the emergency generator. Doc. Nos. 9 & 21; *see also* Doc. No. 12, First Am. Compl. 5 ¶ 3.

On March 5, 2008, Schoenlein and the other consolidated plaintiffs were moved to different cells at HCF High, due to their complaints of diesel exhaust entering their cells. Defs.' Opp'n 4.

The court held a hearing on Schoenlein's Requests on March 7, 2008. Doc. No. 24. At that hearing, the parties agreed that the HCF High generator would not be tested or otherwise run, barring an emergency, until air quality tests were performed, and then only if the tests determined that the air quality in the cells was safe. The court then held that Schoenlein's Requests were moot because the generator would not be operated until the air quality was tested, which was the relief Schoenlein had sought. The court also denied as moot Schoenlein's request for a temporary transfer to the FDC-Honolulu. *See* Doc. No. 24. The court informed Schoenlein that his Requests were "subject to reopening based on [the air quality testing] findings." *Id.*

Defendants filed a preliminary air quality report on March 20, 2008. *See* Doc. No. 31, "Defendants' Preliminary Report of Air Quality Tests." The preliminary report informed the court that the air quality tests were completed on March 17, 2008,[2] and that the tests revealed that there were no toxic gases entering the HCF High's cells. The preliminary report states simply that, "[t]he air quality tests at Module A, Halawa Correctional Facility Special Needs, were done on March 17, 2008[,] and the readings were well within safe limits." *Id*.

On April 2, 2008, Defendants filed the final air quality test report. *See* Doc. No. 44, "Defendants' Report to the Court on Air Quality Testing Performed at Halawa Special Needs Facility." The court immediately scheduled a status conference to be held on April 4, 2008, to expeditiously resolve Schoenlein's charges that he was being exposed to toxic gases. The court directed Defendants to ensure that a copy of the final report was given to Schoenlein and to the other plaintiffs at the prison before the status conference took place.

At the April 4, 2008 status conference, this court explicitly inquired whether Schoenlein and the other plaintiffs had received a copy of the final air

---

[2] As discussed more fully below, Defendants' report on the air quality testing contained a clerical error, stating that the tests were performed on March 17, 2007, rather than on March 17, 2008. Because it is clear that the tests were performed in 2008, the court accords no significance to this error.

quality test report, dated April 2, 2008, and all three plaintiffs replied affirmatively. FTR recording, Apr. 4, 2008 status conference.[3] Schoenlein was given the opportunity to reopen his Requests for Injunction at that hearing, but declined to do so. *Id.*

On April 24, 2008, Schoenlein was moved back to the HCF Medium Security unit. Defs.' Opp'n 4.

On April 30, 2008, Schoenlein filed a declaration alleging that he had not received a copy of the air quality report until April 10, 2008, six days after the status conference on his Requests was held.[4] Doc. No. 86. Schoenlein's declaration is vague as to which report he referred, although it appears that he was referring to the preliminary report, not the April 2, 2008 final air quality report. Schoenlein's declaration suggested that he was prejudiced at the April 4, 2008 status conference due to the alleged delay in his mail.

---

[3] An "FTR" recording is a digital recording made during court hearings or status conferences when a court reporter is not available or necessary. *See* http://fortherecord.com.

[4] Schoenlein alleges that his April 30 declaration, titled "Plaintiffs [sic] Not Receiving Documents in Timely Matter," is a motion. Schoenlein did not move for any relief or court order, however, and the court construed this document as a declaration that Schoenlein's mail is being delayed, not as a motion. The declaration was stricken as improperly filed. *See* Doc. No. 8.

Schoenlein filed the present Motion to Reopen Request for Preliminary Injunction on May 2, 2008. Doc. No. 93.[5] In his Motion, Schoenlein argues that: (1) Defendants' statement that the air quality tests were done on March 17, *2007* (as opposed to 2008), is "inaccurate and would render the test Invalid."; (2) he sought a *permanent* injunction to either prevent Defendants from running the emergency generator, or requiring them to repair the generator, and Defendants' repair of the caulking in the window of cell No. 3 was insufficient to cure the problem, because he still smelled exhaust fumes after this repair; (3) the air quality tests were not extensive enough because they were only taken outside of Module A, and did not encompass Quads 1 and 2 of Module A, but only cell No. 3; (4) the equipment used to test the air was calibrated only for "indoor" use, and Defendants' statements regarding the outside air quality are therefore inaccurate; (5) Defendants' testing protocol was faulty, because they allowed the emergency generator to run for twenty minutes prior to testing, which skewed the results because a cold engine's exhaust fumes are much higher than an engine that has been allowed to "idle"; and (6) ACO Sgt. Carter told Schoenlein that prison

---

[5] On May 2, 2008, Schoenlein filed a "Motion for Appeal to Reopen Request for Preliminary Injunction." Doc. No. 93. On May 8, 2008, this court entered an Order, requiring Schoenlein to clarify if he was attempting to appeal to the Ninth Circuit or to reopen his request for an injunction in this court. *See* Doc. No. 103. On May 22, 2008, Schoenlein clarified that he meant to reopen his request for injunction, not to appeal. Doc. No. 112. Defendants were then given until June 2, 2008, to file a response. Doc. No. 113.

officials were aware of the fumes entering HCF High, as well as exhaust fumes entering HCF Medium from idling vehicles. Schoenlein included this information in a "supplement to Original Complaint," that he filed on February 26, 2008, and that, because he has been transferred back to HCF Medium, he has also smelled exhaust fumes at HCF Medium on May 2 and 16, 2008. Pl.'s Mot. 1-3.

## II. **LEGAL STANDARD**

Because it is somewhat unclear if Schoenlein's Motion to Reopen his Requests for Injunction is a motion for reconsideration or a motion for continued preliminary injunction, the court examines the Motion under both standards of review.

**A.    Motion for Reconsideration**

Local Rule ("LR") 60.1 for the United States District Court for the District of Hawaii, which applies to motions for reconsideration of interlocutory orders, states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a) Discovery of new material facts not previously available;
>
> (b) Intervening change in law;
>
> (c) Manifest error of law or fact.

> Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed.

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).

Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *Hawaii Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (*citing Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

**B.     Preliminary Injunction**

The standard for granting a preliminary injunction and the standard for granting a temporary restraining order ("TRO") are identical. *See Haw.*

*County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997). To obtain a TRO or preliminary injunction, the moving party must demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor." *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007) (*citing Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003)). "These two options represent extremes on a single continuum: 'the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor.'" *Id.* (*citing Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003)). An alternative interpretation of the test requires: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* (*citing Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995)). A district court has great discretion in determining whether to grant or to deny a TRO or preliminary injunction. *See Wildwest Inst. v. Bull*, 472 F.3d 587, 589-90 (9th Cir. 2006).

In a prisoner civil rights action, these standards must also be viewed in conjunction with the requirements of the Prison Litigation Reform Act of 1995, 18 U.S.C. § 3626 ("PLRA"). *See Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) ("Although the PLRA significantly affects the type of prospective injunctive relief that may be awarded, it has not substantially changed the threshold findings and standards required to justify an injunction."). The PLRA provides, in pertinent part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A).

### III. DISCUSSION

For the following reasons, the Motion to Reopen Request for Injunction is DENIED.

**A.    Schoenlein's Motion is Untimely**

Insofar as Schoenlein's Motion to Reopen is a motion for reconsideration of either the March 7, 2008 finding that Schoenlein's Requests

were moot, or of Schoenlein's own decision to forgo reopening his Requests at the April 4, 2008 status conference, the Motion is untimely. Disregarding Schoenlein's statements at the April 4 Status Conference that he *had* received the April 2, 2008 air quality report, and accepting Schoenlein's allegations that he *did not* receive the final report until April 10, 2008, Schoenlein does not explain why he did not file his Motion for Appeal, now construed as a Motion to Reopen Request for Preliminary Injunction, until May 2, 2008.

Schoenlein clearly bases his Motion on his belief that a manifest error of law or fact has occurred, as he presents no new evidence or intervening law in support of his Requests for injunction. Schoenlein had ten days from either March 7, April 4, or leniently allowing him until the date he states that he received the air quality report, April 10, 2008, to file a motion for reconsideration. Schoenlein signed his Motion on April 29 and it was filed May 2, 2008, rendering it untimely.

## B. The Request for Injunction is Denied

Insofar as the Motion is construed as a renewed request for an injunction preventing Defendants from operating the emergency generator, and a Reply to Defendants' Opposition to the Motion for Temporary Restraining Order, Doc. No. 18, and Opposition to Defendants' final Air Quality Test Report, Doc. No. 44, it is unpersuasive on its merits. First, Defendants' clerical error stating

that the air quality test was performed on March 17, 2007, rather than March 17, 2008, does not render the tests results inaccurate or invalid. All parties, including the court, have operated under the reasonable assumption that the test was performed on March 17, 2008. A simple clerical error does not render the test results inaccurate.

Second, Schoenlein's arguments that he sought a *permanent* injunction preventing the emergency generator from being run until repaired, and that he still smelled fumes after the window in cell No. 3 was recaulked, are irrelevant. The court ordered that the generator not be run, absent an emergency, until air quality tests were performed. If the tests showed that toxic fumes were evident in HCF High, however, the parties would meet again and the injunction would continue. The air quality tests show that the emergency generator is not producing toxic fumes that engulf HCF High, and Schoenlein has produced no evidence rebutting those tests. Based on this uncontroverted evidence, there is no need for the emergency generator to be repaired or permanently restrained from operation. The fact that Schoenlein still smelled fumes after the window was recaulked is immaterial; the tests show that fumes were not at toxic levels.[6]

---

[6] The court makes no determination on whether there were toxic fumes in Module A *prior* to Defendants' remediation efforts outlined in their Opposition to Schoenlein's Motion for

(continued...)

Third, the court rejects Schoenlein's argument that the air quality tests were inadequate because they were only taken at cell No. 3 and at Quad 3 of Module A. Schoenlein argues that testing should have been done at Quads 1 and 2, which he alleges are closest to the emergency generator. Defendants' final report states that "[r]eadings were taken at [Module A] Quad 2, cell No. 3 and at Quad 3. . . . Samples were then taken at other various points throughout Module A." Doc. No. 44, Defs.' Report to the Court On Air Quality Testing at 3. Schoenlein apparently misread the report, and furthermore, does not explain how he knows where the air quality tests were actually performed when he was presumably in his cell during the testing.

Fourth, Schoenlein disputes the air quality test's accuracy because the testing equipment was calibrated for indoor use only, which he alleges renders the outside results inaccurate. Schoenlein, however, complained in his Amended

---

⁶(...continued)
Injunctive Relief. *See* Doc. No. 18. In that Opposition, Defendants informed the court that after Schoenlein and the other plaintiffs complained of the fumes, but prior to the air quality testing, cell No. 3's window was recaulked, the air conditioning system near the generator was physically covered, and a large exhaust fan was run while the generator was turned on to dissipate any possible fumes. It is possible that these remediation efforts were sufficient to stop toxic fumes from entering the cells. That issue, however, has no bearing on whether HCF should be permanently enjoined from running the emergency generator in the basement of HCF High, which is the question now before this court. The court notes, however, that Defendants did not use the exhaust fan when the air quality tests were performed, suggesting that the exhaust fan had no remedial effect on the toxicity levels of the exhaust fumes entering HCF High.

Complaint and in his Requests for injunction that fumes *inside* his cell and *inside* Module A were toxic. While he may be correct that test results from outside of the facility are inaccurate (although the court makes no determination on this question) his argument is beside the point. Schoenlein provides no evidence to suggest that the indoor test results, which are the relevant results, are inaccurate.

Fifth, the court rejects Schoenlein's argument that the tests were inaccurate because the generator was allowed to run for twenty minutes before the air inside Module A was tested. Schoenlein has not been certified as an expert on toxic emissions in this action; he is simply a party, and his statements are not accepted as competent evidence rebutting Defendants' test results. The record shows that HCF High is a tightly sealed, air-conditioned environment. The exhaust fans at HCF High, which would normally have exhausted the fumes to the outside of the building, were turned off during the tests to ensure that the fumes would be present during the test. As Defendants argue, common sense dictates that this protocol ensured that the air quality tests would capture the highest concentration of gases in the HCF High living areas, Schoenlein's statements to the contrary notwithstanding.

Finally, Schoenlein's request -- that the emergency generator's use at HCF High be enjoined until repaired -- is moot. "[A] suit for injunctive relief is

14

normally moot upon the termination of the conduct at issue[.]" *Demery v. Arpaio*, 378 F.3d 1020, 1025-26 (9th Cir. 2004). Testing shows that the emergency generator has not been releasing toxic gases since at least March 17, 2008, the date the tests were run, and Schoenlein does not argue otherwise.

Schoenlein's claims for injunctive relief do not fall into the recognized "capable of repetition, yet evading review," exception to the mootness doctrine. *See Roe v. Wade*, 410 U.S. 113, 125 (1973). To fit within this exception, Schoenlein must show he is realistically threatened by a repetition of the violation, and that absent court-ordered injunctive relief preventing the harm, he will be subject to immediate and irreparable future injury. *City of L.A. v. Lyons*, 461 U.S. 95, 109, 111 (1983); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1136 (D. Haw. 2006).

Schoenlein attempts to avoid this bar, by stating that he has been "hop-scotched" from cell to cell and there is a possibility that he will be returned to HCF High. Defendants dispute this, stating that Schoenlein and the other plaintiffs have been transferred to HCF Medium now that it has been refurbished, which is where their classification as pre-trial detainees dictates, and there is no reasonable expectation that they will be returned to HCF High, unless they misbehave and are returned due to a change in their custody status.

As detailed above, however, the air quality test results show that there are no toxic fumes emanating from the emergency generator into the cells at HCF High. Thus, regardless of whether Schoenlein is transferred back to HCF High, due to his own prison rules infractions, the prison's otherwise unfettered discretion, or because he is convicted and his custody status dictates placement in HCF High, he will not be subject to the alleged conditions that he complained of in his Requests for Injunction. As such, Schoenlein's claims for injunctive relief are MOOT.[7]

Schoenlein also alleges that he *now* smells exhaust fumes at HCF Medium from vehicles idling outside the unit. Schoenlein raised this issue, based on an informal conversation with Sgt. Carter and not on his own personal exposure to these fumes, in his Supplement to the Original Complaint.[8] The Original Complaint and its Supplement was dismissed and is no longer operative

---

[7] Having found that Schoenlein's claims for relief are moot, the court will not address the parties' other mootness arguments, including the applicability of *Armstrong v. Davis*, 275 F.3d 849, 866 (9th Cir. 2001), to this matter.

[8] In the Supplement, Schoenlein stated: "Sgt Carter stated that he [] along with all Officers and staff [were] aware of the exhaust fumes coming into Module A, Quad 2, and that Sgt Carter has had several verbal complaints from Inmates in the Medium Special Holding Unit, due to officers and Staff leaving Vehicles running in the Sallyport under the Medium Special Holding Unit." Doc. No. 5, Supplement at 4-5.

in this action.⁹ *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint" because the dismissed complaint becomes a nullity upon the filing of an amended complaint). Schoenlein confined the Amended Complaint to his allegations regarding exhaust fumes in HCF High. As such, claims in the Supplement are waived. Moreover, Schoenlein's claims that he periodically smells vehicle exhaust fumes at HCF Medium has no bearing on his Requests to enjoin operation of the HCF High emergency generator.

He cannot, therefore, demonstrate a likelihood of success on the merits of his Requests, and the possibility of irreparable harm, or show that there are serious questions going to the merits of his claims. The balance of hardships here does not tip in Schoenlein's favor. Schoenlein's Requests for Injunctive Relief are DENIED.

## IV. CONCLUSION

Insofar as Schoenlein's Motion is construed as a Motion for Reconsideration, it is untimely. Further, Schoenlein's Requests for Injunction are DENIED AS MOOT, because even if Schoenlein were transferred back to HCF

---

⁹ The court informed Schoenlein that he could include the claims raised in the Supplement in his Amended Complaint, but he did not do so. *See* Doc. No. 8.

High, the unrefuted evidence before the court is that there are no toxic fumes produced by the emergency generator inside Module A of HCF High, at least since March 17, 2008, the date of the air quality testing. Schoenlein's claims that he is now smelling vehicle exhaust fumes in HCF Medium have no bearing on his Requests for Injunction. Accordingly, the Motion to Reopen Request for Injunction is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 13, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Schoenlein v. Halawa Corr'l Facility, et al.*, Civ. No. 08-00073 JMS/KSC; *Brooks v. Halawa Corr'l Facility, et al.*, Civ. No. 08-00074 JMS/KSC; *Jones v. Halawa Corr'l Facility, et al.*, Civ. No. 08-00075 JMS/KSC; Order Denying Plaintiff Schoenlein's Motion to Reopen Request for Injunction; dmp/TROs 08/ Schoenlein08-73, 74,75 (Dny Mot to Reopen tro or p.inj)