IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GREG W. SCHOENLEIN, | ) <br> ) | CIVIL NO. 08-00073 JMS-KSC |
| Plaintiff, | ) <br> ) | ORDER GRANTING <br> DEFENDANTS' MOTION TO |
| vs. | ) <br> ) | DISMISS CIVIL NO. 08-00073 FOR <br> FAILURE TO EXHAUST |
| HALAWA CORRECTIONAL <br> FACILITY, et al., | ) <br> ) <br> ) | ADMINISTRATIVE REMEDIES |
| Defendants. | ) |  |
| _____ | ) |  |
| DENNIS R. BROOKS, | ) <br> ) | CIVIL NO. 08-00074 JMS-KSC |
| Plaintiff, | ) <br> ) | ORDER GRANTING <br> DEFENDANTS' MOTION TO |
| vs. | ) <br> ) | DISMISS CIVIL NO. 08-00074 FOR <br> FAILURE TO EXHAUST |
| HALAWA CORRECTIONAL <br> FACILITY, et al., | ) <br> ) <br> ) | ADMINISTRATIVE REMEDIES |
| Defendants. | ) |  |
| _____ | ) | CIVIL NO. 08-00075 JMS-KSC |
| OPHERRO JONES, | ) <br> ) | ORDER GRANTING |
| Plaintiff, | ) <br> ) | DEFENDANTS' MOTION TO <br> DISMISS CIVIL NO. 08-00075 FOR |
| vs. | ) <br> ) | FAILURE TO EXHAUST <br> ADMINISTRATIVE REMEDIES |
| HALAWA CORRECTIONAL <br> FACILITY, et al., | ) <br> ) <br> ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

# ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS CIVIL NOS. 08-00073, 08-00074, AND 08-00075 FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiffs allege that toxic fumes engulfed their Halawa Correctional Facility prison cells on several occasions during the testing of the prison's emergency generator. Defendants move to dismiss the Complaints, arguing that each Plaintiff has failed to exhaust his prison administrative remedies prior to bringing an action in this court. After reviewing supporting, opposing, and supplemental memoranda, the court GRANTS Defendants' Motions to Dismiss.[1]

## I. LEGAL STANDARD

**A.    Federal Exhaustion Principles**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although the district court at one time had discretion to permit a case to proceed without exhaustion, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

---

[1]    The court finds this matter suitable for disposition without a hearing. *See* Local Rule 7.2(d).

Exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also McKinney v. Carey*, 311 F.3d 1198, 1199-00 (9th Cir. 2002) (per curiam). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to bringing suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). The grievance process must be completed before the inmate files suit; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *Ngo*, 548 U.S. at 90.

A prisoner's failure to exhaust is an affirmative defense, which defendants have both the burden of raising and proving. *Jones v. Bock*, 549 U.S. 199 (2007); *see Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) ("[Section] 1997e(a) creates a

defense-defendants have the burden of raising and proving the absence of exhaustion."). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt*, 315 F.3d at 1119. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact.[2] *Id.* at 1119-20. If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

**B.     Hawaii's Administrative Exhaustion Procedure**

Hawaii's prisoners may administratively exhaust their complaints and grievances pursuant to the Department of Public Safety's ("DPS") Policies and Procedures Manual (1992) ("DPS Manual"), § 493.12.03(4.0). These rules establish a three-step process for exhausting an administrative appeal -- the inmate must submit a grievance at each step, and wait either for a response to that grievance or for the time to expire for receiving a response, before moving on to the next step. *See* DPS Manual § 493.12.03.13–.15.

At Step 1, the inmate must submit a grievance to a Unit Manager within fourteen days of the date on which the basis of the alleged complaint

---

[2]    If the court looks beyond the pleadings in deciding a motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). Plaintiffs were given such notice. *See* Doc. Nos. 192, 193, 196, & 209.

4

occurred. The Unit Manager has fifteen working days from the date of receipt of the grievance during which to investigate and respond. If the inmate receives an adverse determination at Step 1, the inmate has up to five days to file a Step 2 appeal of the Unit Manager's decision with the Branch Administrator. The Branch Administrator then has fifteen working days from the date of receipt of the Step 2 appeal to submit a written response to the inmate. Again, if the inmate receives an adverse determination, the inmate has up to five days to file a Step 3 appeal with the Division Administrator. The Division Administrator has twenty working days from the date of receipt of the inmate's Step 3 appeal within which to submit a written response to the inmate. The Division Administrator's decision is final. *Id.*

Inmates may also file an emergency or privileged grievance, with differing time limits and procedures, if a matter is "of a sensitive nature, and there exists a reasonable belief that punitive measures will be taken at the hands of facility staff or other inmate, or would otherwise be adversely affected if it is known at the facility that the complaint/grievance is being filed." *Id*. § 493.12.03.10. If an inmate refuses to sign for receipt of a grievance response, the grievance is considered concluded per DPS Manual § 493.12.03.4.14j(4). Further, if the facility fails to respond to an inmate's grievance within the time

5

allowed, the inmate may proceed to the next step in the grievance process. *Id.*
§ 493.12.03.4.14l.

## II. DISCUSSION

Plaintiffs allege that toxic fumes engulfed their cells when the prison's emergency generator was operated, and that Defendants were deliberately indifferent to their health and safety. Defendants argue that none of the Plaintiffs has completed any grievance concerning their respective claims through Step 3, as required by Hawaii's regulations. Each Plaintiff separately disputes this, arguing that they were not required to proceed to Step 3 because they were each told that their concerns were, or would soon be, resolved by prison officials. To resolve this issue, the court must determine when Plaintiffs brought their Complaints[3] to the federal court, and the history of their administrative grievances.

**A.    All Three Plaintiffs "Brought" Their Complaints on February 12, 2008**

Schoenlein and Brooks signed their Complaints on February 11, 2008; Jones signed his Complaint on February 12, 2008. Adult Correctional Officer ("ACO") John Hall accepted each of Plaintiff's Complaints on February 12, 2008, for mailing to the court. *See, e.g.*, Schoenlein's Oct. 14, 2008 Resp.; Defs.' Oct. 20, 2008 Supplemental Br. The Complaints were deposited in the

---

[3]    "Complaint" refers to Plaintiffs' federal court pleadings, as opposed to any grievance or complaints Plaintiffs may have submitted to prison authorities for resolution.

6

prison's outgoing mail bin that same date. Defs.' Oct. 20, 2008 Supplemental Br. Plaintiffs' envelopes are each postmarked February 14, 2008, and were received by the court on February 15, 2008.[4] Jones was granted *in forma pauperis* on March 17, 2008; Schoenlein and Brooks were granted *in forma pauperis* on March 20, 2008.

A prisoner's action is considered "brought" for purposes of § 1997e(a), when the prisoner "submits" the complaint to the court, as opposed to the date that the prisoner's complaint is actually filed by the court after *in forma pauperis* is granted. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Ford v. Johnson*, 362 F.3d 395, 398-99 (7th Cir. 2004). And under the prison mailbox rule, each Plaintiff "submitted" their respective Complaints to the court on February 12, 2008, when they tendered their original Complaints to ACO Hall for mailing. *See Houston v. Lack*, 487 U.S. 266 (1988) (holding that, under the Federal Rules of Appellate Procedure, a legal document is deemed filed on the date a prisoner delivers it to prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court). Every circuit to have reached the issue has held that the prison mailbox rule also applies to the filing of complaints.

---

[4] Although the Complaints are file-stamped on February 20, 2008, the docket in each case explains that each Complaint is filed *nunc pro tunc* to February 15, 2008, the date they were actually received by the court.

7

*See, e.g.*, *Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (per curiam); *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 736 (4th Cir. 1991) (per curiam).[5] Further, the Seventh Circuit applies the prisoner mailbox rule to § 1997e(a). In determining when an action was "brought," the court stated that the inmate "thought that mailing the complaint to the court was enough to bring suit; we hold that, for purposes of § 1997e(a), it was." *Ford*, 362 F.3d at 399.

The court recognizes that normally the prison mailbox rule operates in favor of the prisoner, by giving the prisoner the benefit of the doubt in situations that are out of the prisoner's control, and setting a date certain that a document is considered properly before the court. *See Faile v. Upjohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993) (stating that the court's main concern in determining when *Houston's* mailbox rule should be extended to new situations is "whether the circumstances involve the same lack of control over timeliness described in *Houston*"), *disapproved on other grounds*, *McDowell v. Calderon*, 197 F.3d 1253,

---

[5] Although the Ninth Circuit has not specifically reached the issue, it has held that there is "no reason to treat other civil 'filing' deadlines [in prisoner cases] differently than the deadline for filing a civil appeal" as set forth in *Houston v. Lack*, 487 U.S. 266 (1988). *Faile v. Upjohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993), *disapproved on other grounds, McDowell v. Calderon*, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999).

1255 n.4 (9th Cir. 1999). The rule is not a one-way street, however. In fact, application of the mailbox rule to § 1997e(a) furthers Congress' intent in enacting the PLRA -- to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524-25 (2002). Because the "moment at which *pro se* prisoners necessarily lose control over and contact with their [complaints] is at delivery to prison authorities, not receipt by the clerk," *Houston*, 487 U.S. at 275, the suit is necessarily "brought" when the prisoner has made the decision to place the complaint beyond his control -- that is, when it is placed in the mail. To hold otherwise would severely undermine Congress' clear objective to have all internal grievances finalized *prior* to the initiation of any federal court action. *See Vaden*, 449 F.3d at 1051 (finding that a prisoner "may initiate litigation in federal court only after the administration process ends and leaves his grievances unredressed").

Thus, each Plaintiff was required to complete the administrative grievance procedure concerning his claims on or before February 12, 2008.

### 1. *Schoenlein's Grievances Made on or Before February 12, 2008*

Schoenlein filed three relevant grievances on or before February 12, 2008. First, on February 4, 2008, Schoenlein submitted Grievance #145912, concerning the allegedly toxic fumes entering his cell. Defs.' Mot. to Dismiss

Schoenlein's Claims, Attach. 1. Prison officials did not respond to this grievance until July 8, 2008. *Id.* Because Schoenlein had not received any response to #145912, he filed a Step 2 appeal, #135647, on March 5, 2008, complaining of this failure.[6] *Id.* On March 6, 2008, DPS Inmate Grievance Specialist Linda Rivera told Schoenlein that the "matter is now in the jurisdiction of the courts and no further responses to grievances will be rendered." *Id.* Grievance #135647.

Schoenlein filed a second Step 1 grievance on February 11, 2008, #145922, and a third Step 1 grievance on February 12, 2008, #145936. *Id.* These grievances both complained about the fumes allegedly entering his cell, as well as other issues. Rivera responded to both of these grievances on February 14, 2008. *Id.* Rivera informed Schoenlein that the prison would take precautionary measures in the future to ensure that he would not be exposed to dangerous fumes again.[7]

---

[6] Schoenlein apparently also appealed grievance #145912 in a separate appeal, #132772.

[7] In addition, Schoenlein submitted three Step 1 grievances after February 12, 2008: (1) #132551, February 13, 2008; (2) #145944, February 14, 2008; and (3) #132570, February 25, 2008. Defs.' Mot. to Dismiss Schoenlein's Claims, Attach. 1. Rivera responded to the first two grievances on February 15, 2008, by informing Schoenlein that his grievances were moot because he had been moved to a new cell and the prison was taking corrective action on the problem. *Id.* Rivera responded to #132570 on March 11, 2008, stating that the problem was being addressed by the facility and by the court. *Id.*

Schoenlein submitted two Step 2 grievances: (1) #132571, February 24, 2008, appealing #132551; and (2) #132772, March 3, 2008, appealing #132551 and #145912. *Id.* In response, Rivera told Schoenlein that he either provided no basis for appeal, or that his appeals were moot because the prison was addressing the problem. *Id.*

Schoenlein submitted one Step 3 grievance, #132769, Mar. 4, 2008, appealing #132551. *Id.* Rivera took no action, because Schoenlein failed to abide by grievance procedures, but told Schoenlein that he could still appeal #132551, if he complied with the rules. *Id.*

Schoenlein acknowledged receipt of this resolution on February 15, 2008, three days after he gave his Complaint to prison authorities for mailing. Schoenlein also filed a Step 2 appeal, #132577, appealing grievance #145922, on December 18, 2008. He was told that he failed to provide a basis for appeal, and the appeal was thus denied. He also filed a Step 2 appeal, #132563, appealing grievance #145936, on February 20, 2008. For this appeal, he was told that the appeal was moot due to the ongoing litigation.

### 2. *Brooks' Grievances Made on or Before February 12, 2008*

On February 11, 2008, Brooks submitted a Step 1 grievance, #132515, concerning the allegedly toxic fumes. Defs.' Mot. to Dismiss Brooks' Second Am. Compl., Errata, Attach. 1. Rivera responded on February 14, 2008, informing Brooks that the prison was taking steps to ensure that he would not be exposed to dangerous levels of fumes in the future. Brooks signed for receipt of the resolution on February 15, 2008. *Id.* Brooks did not proceed to Step 2.[8]

///

///

---

[8] In addition, Brooks filed two Step 1 grievances after February 12, 2008: (1) #145940, on February 25, 2008; and (2) #132575, on March 3, 2008. Defs.' Mot. to Dismiss Brooks' Second Am. Compl., Errata, Attach. 1. Rivera informed Brooks that (1) his claims were moot because he had initiated litigation over the issue and they were being addressed by the court, and (2) he cannot file grievances over the same issue simply because the problem reoccurred, but must give the prison an opportunity to address the problem. *Id.*

11

### 3. *Jones' Grievances Made on or Before February 12, 2008*

On February 12, 2008, Jones submitted his first Step 1 grievance, #132520, concerning the allegedly toxic fumes. Defs.' Mot. to Dismiss Jones' First Am. Compl., Errata Attach. 1. Rivera responded to Jones' grievance on February 14, 2008, resolving it in the same manner as Brooks' and Schoenlein's grievances. Jones acknowledged receipt of this resolution on February 15, 2008.[9]

## B. Plaintiffs' Grievances Were Unexhausted When They "Brought" Their Respective Actions

Once a prisoner has exhausted "available" remedies, and no further relief is available (that is, if his grievance is upheld at a first or second level, or he is told that his grievance is "moot" and the grievance process is therefore concluded) then there are no further "remedies . . . available," and the prisoner need not further pursue the grievance. *See Brown*, 422 F.3d at 935. Plaintiffs' grievances concerning allegedly toxic fumes entering their respective cells were therefore exhausted on February 15, 2008, when they received notice from Rivera

---

[9] Defendants aver that, in total, Jones filed three Step 1 grievances, two Step 2 appeals, and no Step 3 appeals. *See* Defs.' Mot. to Dismiss Jones' First Am. Compl., Hoffman Decl. ¶ 6. In support, Defendants supply a chart showing Jones filed two Step 1 grievances: (1) #132561, on February 21, 2008; and (2) #132562, on February 25, 2008. *Id.* They supply only a copy of Jones' receipt of Rivera's response to #132561, not the response itself. Defendants do supply copies of Jones' Step 2 grievances: (1) #135163, February 15, 2008, appealing #13250; and (2) #132774, March 19, 2008, appealing #132561. Rivera responded that Jones cannot appeal #132520 because the prison had taken action to resolve the grievance, and that, since he had commenced litigation, "the grievance process is moot." *Id.*

12

that the prison administration was taking corrective action on their claims. *See, e.g.*, Resp. to Schoenlein's Grievance #145922 & #145936; Resp. to Brooks' Grievance #132515; Resp. to Jones' Grievance #132520.

Plaintiffs' claims were thus not resolved when they "brought" the instant actions -- that is, they gave their respective Complaints to prison officials for mailing on February 12, 2008, two days before Rivera supposedly resolved their grievances, and three days before Plaintiffs became aware of the resolution of their grievances. *See Vaden*, 449 F.3d at 1050; *Ford*, 362 F.3d at 399. As such, Plaintiffs' actions are DISMISSED without prejudice for their failure to exhaust administrative remedies prior to initiating suit in this court. *McKinney*, 311 F.3d at 1200-01 (holding that exhaustion is a precondition to suit and dismissing action without prejudice); *Vaden*, 449 F.3d at 1051 (dismissing a prisoner's suit without prejudice that was sent to the court prior to exhaustion of prison administrative remedies).

## C. Defendants' Arguments

In holding that Plaintiffs' actions must be dismissed, the court does not accept Defendants' argument that Plaintiffs failed to exhaust their claims by not pursuing their grievances through Step 3. To the contrary, Plaintiffs' claims were clearly exhausted, albeit after they "brought" their actions. Rivera's

statements that the prison was addressing the problem effectively resolved Plaintiffs' complaints.[10]  Further, Rivera also foreclosed Plaintiffs' grievances when she consistently told Plaintiffs that their appeals were moot because they had filed suit.[11]

Moreover, the court disagrees with Rivera's statements that Plaintiffs' grievances were mooted by their filing lawsuits.  While resorting to litigation before fully exhausting the grievance process has negative legal consequences for prisoners, i.e., the likely dismissal of their actions for failure to exhaust prior to filing suit, it does not necessarily moot the issues presented in the grievances or the prison's continuing need to address those issues.  Congress enacted the PLRA's exhaustion requirement to provide prisons an opportunity to correct their own errors, "eliminate unwarranted federal-court interference with the administration of prisons, [and] 'affor[d] corrections officials [the] time and opportunity to address complaints internally before allowing the initiation of a

---

[10]  *See, e.g.*, Jones' Grievance #135163 ("You cannot appeal #132520 because action was taken upholding your complaint."); Brooks' Grievance #132575 ("You filed a step one on the fumes . . . on 2/25/08 . . . and the response is due by 3/17/08.  You cannot file another complaint even though it was a different day.  The issue is the same and you must allow administration to take proactive action on your complaint to resolve the matter."); Schoenlein Grievance #145944 ("You filed a complaint and corrective steps were taken to resolve your issue. . . .  I also suggest you find a more productive way of occupying your time; filing senseless grievances could result in restrictions to the grievance process.").

[11]  *See, e.g.*, Brooks' Grievance #14590 ("Since you have proceeded with litigation your grievance is being returned and rendered a moot issue.  It is now up to the courts to resolve this matter."); Jones' Grievance #145940 (same); Schoenlein Grievance #132563 (same).

federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Nussle*, 534 U.S. at 525). Rivera recognizes this when she states, "[t]he purpose of the grievance process is to allow administration the opportunity to correct a problem before resorting to the courts." Defs.' Mot. to Dismiss Brooks' Second Am. Compl., Errata, Attach. 1., Grievance #145940.

There is no legal reason, however, why the prison must terminate the grievance process once an inmate has filed a lawsuit, and several persuasive reasons why it should not. First, as set forth in *Woodford*, the State has, or should have, an interest in resolving legitimate complaints about the administration of its prisons. *Woodford*, 548 U.S. at 89. If prison officials terminate the grievance process before a prisoner's grievance is resolved, this interest is thwarted.

Second, if an inmate is satisfied with the resolution of a grievance that occurs while litigation is pending, he may voluntarily dismiss the suit, possibly before service is effected. This would further Congress' goal of "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." *Nussle*, 534 U.S. at 524-25. It also promotes efficiency, spares overburdened court resources, and saves the State the time and expense expended defending against the lawsuit. *Id.*

Third, if the court dismisses a prisoner's lawsuit without prejudice, and the inmate refiles after curing the procedural problems, exhaustion may be excused if prison officials had prevented the prisoner from effectively exhausting his claim while litigation was proceeding.

Finally, allowing the inmate to fully exhaust may later provide evidence at trial that the State fully addressed the inmate's concerns. *Id.* (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.")). These factors counsel strongly against the DPS' apparent practice of denying inmate grievances out of hand once litigation has commenced.

### D. Plaintiffs' Arguments

Finally, the court rejects Plaintiffs' argument that exhaustion is excused here because the issues presented do not encompass "normal" conditions of confinement. Plaintiffs cite an unpublished case, *Ahmadi v. Ridge*, 2006 WL 3051791 (3d Cir. Oct. 27, 2006), for this proposition. *Ahmadi* is inapposite to Plaintiffs' cases, as it involved an inmate complaining that the Department of Homeland Security had illegally placed his name on a watch list. The Third Circuit held that exhaustion was not required because the claim did not involve

prison conditions nor were prison officials responsible for the alleged violation. *Id.* at *1. Plaintiffs' claims here, that Defendants were deliberately indifferent to Plaintiffs' health and safety by allegedly allowing toxic gas to enter Plaintiffs' cells, are clearly claims concerning conditions of confinement against actions allegedly committed by prison officials.

The court also rejects Plaintiffs' arguments that exhaustion is excused because (1) they were not given formal instruction on the prison's grievance procedures; and (2) Defendant Carter told them, on February 15, 2008, "to exhaust your resources, because no one is going to do anything." *See, e.g.*, Jones' September 9, 2008 Opp'n at 2. Plaintiffs argue that they relied on Carter's statement that no one would do anything, thus, rendering exhaustion futile.

First, each Plaintiff timely filed a Step 1 grievance, suggesting they were well-aware of the grievance process. In Defendants' responses to several of those grievances, Defendants clearly informed Plaintiffs of the procedural requirements for filing an appeal. Plaintiffs were therefore aware of how to initiate a grievance, and then given adequate instruction on how to use the prison's grievance appeal process.

Second, accepting Carter's statement as true and accurate, that statement (1) clearly told Plaintiffs to exhaust their remedies, and (2) came three

17

days after Plaintiffs had already given their Complaints to prison officials for mailing, and thus, cannot be used as a basis for Plaintiffs' failure to fully exhaust their remedies prior to bringing their suits to the federal court.

### III. CONCLUSION

Plaintiffs have exhausted their claims concerning allegedly toxic fumes entering their respective cells, but they did not do so until after they brought their respective actions to this court. Accordingly, Defendants' Motions to Dismiss Plaintiffs Schoenlein's, Brooks', and Jones' actions for failure to exhaust are GRANTED. Civil Nos. 08-00073, 08-00074, and 08-00075 are DISMISSED without prejudice. All pending motions are DENIED.

This Order does not prevent Plaintiffs from instituting new suits on their claims, by filing new Complaints and either paying the new filing fees or submitting new *in forma pauperis* applications.

Finally, in light of the court's discussion concerning the prison's handling of inmate grievances after litigation is begun, the Clerk is DIRECTED to send a copy of this Order to Clayton Frank, Director of the Department of Public

///

///

///

Safety, and Thomas Read, Offender Management Program Officer of the Department of Public Safety.

The Clerk of Court is directed to close the case files in Civil Nos. 08-00073 JMS/KSC; 08-00074 JMS/KSC; and 08-00075 JMS/KSC.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 28, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Schoenlein, et al., v. Halawa Corr. Facility, et al.*, Civ. Nos. 08-00073, 08-00074, 08-00075 JMS/KSC; Order Granting Defendants' Motions to Dismiss Civil Nos. 08-00073, 08-00074,and 08-00075 for Failure to Exhaust Administrative Remedies; dmp/Orders 08/ Schoenlein 08-73 JMS-KSC (m. dsm fail exh)